IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Raymond Edward Chestnut, | ) | C/A No.: 1:13-1814-RBH-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Correctional Officer Toni McCoy, individual capacity, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Raymond Edward Chestnut, proceeding pro se and in forma pauperis, brings this civil action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1] At the time of the incidents giving rise to the complaint, Plaintiff was incarcerated at the Federal Correctional Institution in Bennettsville, South Carolina ("FCI-Bennettsville"),[2] a facility of the Bureau of Prisons ("BOP"). Plaintiff sues correctional officer Toni McCoy, alleging claims of excessive force and retaliation.

This matter comes before the court on McCoy's motion to dismiss, or in the alternative, motion for summary judgment.[3] [Entry #44]. The motion having been fully briefed [Entry #55, #73, #74, #75-1, #79-1, #80, #81], it is ripe for disposition. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(d) (D.S.C.),

---

[1] *Bivens* established that victims of a constitutional violation perpetuated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits.

[2] Plaintiff is currently incarcerated at USP-Lewisburg in Pennsylvania.

[3] Because the court has considered matters outside of the pleadings, the undersigned considers the motion as one for summary judgment. Fed. R. Civ. P. 12(d).

this matter has been assigned to the undersigned for all pretrial proceedings. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends the district judge grant McCoy's motion for summary judgment.

I.     Factual Background

Plaintiff alleges that McCoy used excessive force against him on April 30, 2012, while escorting him from the recreation yard to his cell. [Entry #1 at 3]. Specifically, he contends that McCoy placed him in hand restraints and began walking him to his cell. *Id.* Plaintiff alleges McCoy threw him on the floor inside the Special Housing Unit ("SHU"). *Id.* Plaintiff alleges that when he asked McCoy why he threw him on the floor, McCoy told him to "Shut up, I'm about to beat you." *Id.* Plaintiff alleges that McCoy then grabbed his neck, applied his knee with force, and began punching him in the neck, back, stomach, and chest. *Id.* Plaintiff alleges that Lieutenant J. Edwards arrived at the scene, directed McCoy to move away from him, and escorted Plaintiff to medical. *Id.* Plaintiff claims that the alleged assault caused him pain and swelling that lasted several days. *Id.* Plaintiff contends that McCoy filed a fabricated incident report against him on May 1, 2012, in retaliation for his filing a grievance against McCoy related to the April 30, 2012, incident. *Id.* at 4.

In contrast, McCoy states that while he was escorting a handcuffed Plaintiff from the recreation yard to his cell, he informed Plaintiff that he was being placed into a different cell and Plaintiff began yelling and threatening him. [Entry #44-1 at 1–2]. McCoy says that Plaintiff began to pull away from him causing Plaintiff to lose his balance and fall. *Id.* at 2. McCoy states that both he and Plaintiff ended up on the floor.

2

*Id.* McCoy states that he placed one hand on Plaintiff's neck and his other hand on Plaintiff's restraints to gain control over Plaintiff. *Id.* McCoy states that additional staff arrived, placed Plaintiff in leg restraints and took him to be assessed by medical personnel. *Id.* Plaintiff's medical records show that he had mild swelling and pain to his right posterior neck. [Entry #44-4 at 3–4]. McCoy denies punching Plaintiff and contends that Plaintiff scratched him on the right side of his face during the incident. [Entry #44-1 at 2].

Pursuant to the court's instructions, McCoy submitted a video of the April 30, 2012, incident. [Entry #80].[4] The video shows Plaintiff and McCoy walking down a SHU hallway for roughly three seconds. *Id.* at 1:25. Approximately twenty seconds later, Plaintiff and McCoy move back into the view of the camera. *Id.* at 1:45-1:48. It appears that Plaintiff and McCoy are struggling and Plaintiff falls to the floor. *Id.* McCoy then grabs Plaintiff's hand restraints, placing a hand on Plaintiff's neck and a knee to Plaintiff's back. *Id.* at 1:48-2:34. The video shows that Plaintiff continues to move and kick his legs after McCoy applied force. *Id.* The video ends when an officer arrived on the scene and assisted McCoy. *Id.* at 2:32-2:41. The video does not show that McCoy punched Plaintiff at all.

II.     Discussion

    A.     Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no

---

[4] Defendant originally submitted the videos in a format the court was unable to view. [Entry #73, #74].

genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court

4

assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.  Analysis

1.  Excessive Force

Plaintiff contends he was injured when McCoy allegedly threw him to the floor, applied pressure to his neck, and punched him. [Entry #1]. It is well established that the use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 5 (1992).

In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm," rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "'[w]hen prison officials maliciously and sadistically use force to cause harm'. . . 'contemporary standards of decency are always violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).

The Supreme Court has directed courts to balance several factors in determining

whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321.

Plaintiff claims that he did not pull away from McCoy and argues that McCoy applied unnecessary force to his neck area. [Entry #75-1 at 1]. Plaintiff offers an affidavit from Brandon Watts who claims that he observed McCoy escorting Plaintiff from the recreation yard on April 30, 2012. [Entry #79-1 at 2]. Watts states that he observed McCoy punch Plaintiff several times with his fist, but did not observe Plaintiff pulling away or making any threats against McCoy. *Id.* Watts also says he observed McCoy scratch his own face. *Id.*

Considering the video evidence, and Plaintiff's and McCoy's versions of the facts, it appears that some application of force was necessary. It is evident from the video that there was a struggle between Plaintiff and McCoy. The video also shows that McCoy applied force to gain control of Plaintiff after he fell to the floor and that Plaintiff continued to move and kick his legs even after force was applied. Further, the video evidence does not support Plaintiff's allegations that McCoy punched him after he fell to the floor. Under these circumstances, and as the video evidence shows, McCoy's use of force was not excessive. Accordingly, the undersigned recommends that McCoy be granted summary judgment on Plaintiff's excessive force claim.

2.  Retaliation

Plaintiff contends that McCoy filed a false incident report against him in retaliation for his grievance. [Entry #1 at 4–6]. "Retaliation by a public official for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper." *American Civil Liberties Union, Inc. v. Wicomico Cnty.*, 999 F.2d 780, 785 (4th Cir. 1993). However, the Fourth Circuit has also mandated that claims of retaliation should be regarded with skepticism, *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996), and has stated:

> [W]e believe that *in forma pauperis* plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal to survive § 1915(d). To hold otherwise would be to bring virtually every unpopular decision by state actors within the scope of a cause of action for retaliation.

*Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).

To state a claim of retaliation under § 1983, a plaintiff must "allege either that the retaliatory act was taken in response to the exercise of a constitutionally-protected right or that the act itself violated such a right." *Adams*, 40 F.3d. at 75. An inmate must also present more than conclusory accusations of retaliation, *id.* at 74, and must provide facts that show the exercise of his constitutional right was a substantial factor motivating the retaliation. *See, e.g., Cochran,* 73 F.3d at 1318; *Hughes v. Bledsoe*, 48 F.3d. 1376, 1387 n. 11 (4th Cir. 1995). Finally, a plaintiff must show that he suffered some adverse impact on the continued exercise of his constitutional rights as a result of the retaliatory conduct. *American Civil Liberties Union*, 999 F.2d at 785 ("Where there is no impairment of the

plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation.").

Plaintiff's use of the BOP's grievance procedure does not constitute the exercise of a constitutionally-protected right. *Adams,* 40 F.3d at 75 (finding that an inmate does not have a constitutional right to file a grievance). Accordingly, the undersigned recommends McCoy be granted summary judgment on Plaintiff's retaliation claim.

III.   Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that McCoy's motion for summary judgment [Entry #44] be granted and this case be dismissed.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 28, 2014                                  Shiva V. Hodges
Columbia, South Carolina              United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).